UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
EHSAN KHAN,

         Plaintiff,  :  14 Civ. 1011 (ALC)

  -against-  :

HILTON WORLDWIDE, INC. and  :  <u>ORDER AND OPINION</u>
DERRICK CARLO, individually,
         :

         Defendants. X
-------------------------------------------------------------- 
ANDREW L. CARTER, JR., District Judge:

  Plaintiff Ehsan Khan ("Khan") brings this action for declaratory judgment and monetary damages, as well as costs and attorney's fees, against defendants Hilton Worldwide, Inc. ("Hilton") and Derrick Carlo ("Carlo") in his individual capacity. This is a suit alleging retaliation for Khan's complaints of religious and national origin discrimination, as well as retaliation, by his previous employer, Hilton. Khan sues Hilton under Title VII and both Hilton and Carlo under the New York City Human Rights Law ("NYCHRL"). Specifically, Khan alleges that the defendants (1) rejected his application for the full-time position of "Secondary B-List Banquet Server"[1] in response to his having filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 28, 2011 and (2) failed to rehire him for the position of "Secondary B-List Banquet Server" in response to his having filed a complaint with the EEOC on December 21, 2011. This Opinion resolves the defendants' Motion to Dismiss.

  Khan's Title VII retaliation claims against Hilton are dismissed as time-barred, except the failure to rehire claim stemming from his December 21, 2011 EEOC charge. Khan's claims against both defendants under the NYCHRL, which has a longer statute of limitations and a

---

[1] Plaintiff uses this title interchangeably with "Supplemental B-List Banquet Server." *Compare* Compl. ¶ 28, *with id.* ¶ 32. This Opinion uses the former for consistency. *See also* Defs.' Mot. Dismiss 10 n. 4 (explaining that the two positions "are one and the same").

1

lower threshold for liability, survive as well. For the reasons elaborated herein, the defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

On or around November 5, 2005, Khan began working for Hilton as a "Café Attendant" at the Starbucks inside the Waldorf Astoria New York ("the Waldorf"), which paid approximately $27.00 per hour. Compl. ¶ 13. The Waldorf is owned, operated, and maintained by Hilton. *Id.* ¶ 10. In or around November 2005, Khan also started working for Hilton as an "On-Call Banquet Server" whenever additional servers were needed. *Id.* ¶ 14. Throughout the course of his employment, Khan understands his performance to have been above average. *Id.* ¶ 45. In or around August 2010, Khan observed and reported an incident to Hilton's Human Resources Department in which his co-worker, Mohammed Uddin, asked his supervisor, Katherine Theosdic, "Why don't you like me? Is it because I'm Muslim?" *Id.* ¶ 15. Theosdic exclaimed to Uddin, "Yes, it's because you are Muslim!" *Id.* On or around April 11, 2011, Hilton terminated Khan on the stated bases that he had taken coffee without paying for it and had remained on-site for approximately one hour after his scheduled shift had ended and he had signed out. *Id.* ¶ 16. However, all of Khan's non-Muslim co-workers regularly drank coffee without paying, and most of his non-Muslim co-workers remained on the premises after signing out, without penalty. *Id.*

On or around April 28, 2011, Khan filed a complaint with the EEOC in which he complained that Hilton had terminated his employment due to his religion and in retaliation for his having complained of workplace discrimination to HR in August 2010. *Id.* ¶ 17. On or around June 21, 2011, Khan and Hilton entered into an agreement whereby Hilton reinstated Khan in his prior position in exchange for his withdrawal of the August 28, 2011 charge with

prejudice. *Id.* ¶ 18. Preferring the duties of an "On-Call Banquet Server" to those of a "Café Attendant," on or around October 11, 2011, Khan applied for the full-time position of "Secondary B-List Banquet Server." *Id.* ¶ 19. On or around that same date, Khan was interviewed by Hilton's Manager, Paul Dasilva,[2] and took an "interview exam" administered by the same. *Id.* ¶¶ 20, 23.

Hilton hired 10 new "Secondary B-List Banquet Servers," but Khan was not one of them. *Id.* ¶ 20. On or around November 2, 2011, Khan received a letter from Lisa Dash-Grimes, Hilton's Director of Recruitment, which stated, "Although your qualifications are impressive, we regret we cannot take advantage of your skills and experience at this time." *Id.* ¶ 21. In or around mid-November 2011, Khan complained to Carlo, HR Director at the Waldorf, that he felt he was being retaliated against for having filed his April 28, 2011 EEOC complaint. *Id.* ¶¶ 11, 22. Carlo replied, "Don't worry. Your score on the test was almost there. You just missed by a whisker. Apply again next year." *Id.* ¶ 22. However, Dasilva, who had administered the test, told Khan that he had performed very well on the exam and would be receiving information regarding a second round of interviews. *Id.* ¶ 23. When the defendants finally showed Khan his test, he realized that it was not the exam he had completed. *Id.* ¶ 24. Rather, the applicant's name and answers seemed to have been written by the same person who graded the exam. *Id.*

On or around December 21, 2011, Khan filed another complaint with the EEOC, alleging that Hilton had declined to hire him in retaliation for the April 28, 2011 charge. *Id.* ¶ 25. On or around June 24, 2012, the defendants closed the Starbucks where Khan worked, resulting in his termination as a "Café Attendant" and an "On-Call Banquet Server." *Id.* ¶ 26. On or around August 9, 2012, Carlo called all of the employees who had been laid off due to the closing and

---

[2] In the Complaint, Plaintiff also references a "Paul Desalwa," Compl. ¶ 23, which this Opinion treats as the same person and spells "Paul Dasilva" for uniformity.

3

informed them that additional "Secondary B-List Banquet Server" positions would be opening up the following month. *Id.* ¶ 27. After hearing this, Khan informed Carlo that he would be applying for the position, and Carlo replied, "Of course you will get the job if you pass the test. You guys are already in-house employees." *Id.* Just hours after this conversation, Khan received an email from the defendants titled "Application Status" and stating, "Thank you for your interest in Job ID: 71801, the Secondary B-List Banquet Server position with the Waldorf Astoria at 301 Park Avenue, New York, NY. Upon thorough review of your qualifications and experience, we will not be considering you further for this position." *Id.* ¶ 28.

Khan considered the email extremely suspicious because he had not yet applied for the position. *Id.* ¶ 29. Moreover, it is Khan's understanding that none of his co-workers received such a notice. *Id.* Further, the email could not have been referring to the full-time "Secondary B-List Banquet Server" position Khan previously applied for on or around October 11, 2011 because none of the 12 other applicants who were rejected, including Tom Ivezic, Anthony Figuccio, Pavin Seratin, Sharif Ahmed, M. Alam, Mike Chaudhary, Manjour Chaudhary, Salvatore Lercara, M. Simo Oumzil, Wahid Adwan, Spiro Dzelvez, and John Vigoya, received such a notice. *Id.* ¶ 30.

On or around September 30, 2012, Defendants posted the "Secondary B-List Banquet Server" position on Hilton's website and on the bulletin board at the employees' entrance. *Id.* ¶ 31. In or around early October 2012, Khan applied for the job. *Id.* ¶ 32. On or around October 11, 2012, Khan interviewed with Hilton's Assistant Banquet Manager, Gabriel, for the position, during which time Khan took the same "interview test" he had taken the year prior. *Id.* ¶ 33. On or around October 20, 2012, Khan interviewed with Gabriel again, during which time Gabriel informed him that he had passed the "interview test." *Id.* ¶ 34. On or around December 6, 2012,

4

Khan interviewed for a third time with Hilton's Banquet Director, Gene, and its Food and Beverage Director, Tom Long. *Id.* ¶ 35. On or around January 14, 2013, Khan interviewed for a fourth time with Hilton's Resident Manager, Jeffrey, its General Manager, Eric Long, and its Assistant General Manager, Mr. McDermott. *Id.* ¶ 36.

Khan understands that in or around February or March 2013, Hilton hired the following individuals to be "Secondary B-List Banquet Servers": Robert Arnold, Tofal Liton, Francis Butters, Jose Bermio, and Ahmed Mostaque. *Id.* ¶ 37. None of the aforementioned individuals had previously complained of discrimination by the defendants. *Id.* Moreover, Khan understands that none of the hired individuals had as much experience as he did working as a "Server" in Hilton's Banquet Department. *Id.* ¶ 38. In fact, it is Khan's understanding that, except for him, all of the individuals who had been terminated due to the closing of Starbucks on or around June 24, 2012 were subsequently rehired into a position of their choice. *Id.* ¶ 39. In or around May 2013, Khan called Carlo for an update on the status of his application and Carlo stated, "We still don't know." *Id.* ¶ 40.

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "need not include detailed factual allegations, but must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

## DISCUSSION

5

I.   *The Title VII Claims*

Khan's Title VII retaliation[3] claim against Hilton[4] for failure to rehire him due to his filing of the December 21, 2011 EEOC complaint survives. However, the remaining allegations of retaliation fall outside of the statute of limitations. "For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ... within 300 days of the allegedly unlawful employment practice." *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010). Khan filed the EEOC charge underlying the instant action[5] on November 25, 2013. Soric Aff. ¶ 17, Ex. G. Thus, the only retaliatory actions properly under consideration by this Court are those occurring between January 29, 2013 and the date of the EEOC submission.

By January 29, 2013, Khan, who was unemployed due to the closing of Starbucks, had applied to be a "Secondary B-List Banquet Server." On January 14, 2013, just two weeks before the commencement of the 300-day window, Khan interviewed for a fourth time with Hilton's management as part of his bid for the position. And by February or March 2013, after the statutory period had opened, Hilton evidently was hiring applicants for the position because that is when Hilton hired Robert Arnold, Tofal Liton, Francis Butters, Jose Bermio, and Ahmed Mostaque. Indeed, in May of that year, when Khan telephoned Carlo to inquire as to the status of his application, Carlo responded, "We still don't know."

---

[3] Title VII provides, in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (West).

[4] Contrary to what is suggested in the motion papers filed by the defendants, on page 8 of the Complaint, Khan makes clear that his Title VII claims are against Hilton only. Compl. 8.

[5] "A Title VII claimant cannot file suit in federal court unless he has filed a timely charge with the EEOC and obtained a right to sue letter." *Williams v. Anheuser-Busch, Inc.*, 162 F.3d 1149, 1150 (2d Cir. 1998) (citing 42 U.S.C. §§ 2000e-5(e) and (f)).

"To establish a *prima facie* case of retaliation under Title VII, an employee must show that: (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (internal quotations omitted). However, this is an evidentiary standard and we are merely at the pleading stage. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006).

There is no disputing that Khan's filing of the EEOC complaint was protected activity, 42 U.S.C. § 2000e-3(a), and that Hilton had knowledge of the filing of the EEOC charge against it, Soric Aff. Ex. C. Unsurprisingly, then, the defendants set their sights on the notion that Khan has not sufficiently pled an adverse action resulting from such knowledge. They posit that because Khan's application has technically not been rejected, he cannot substantiate his failure to rehire theory. Defs.' Mot. Dismiss 10. Their argument is unavailing. It is clear that an employer's failure to rehire an employee qualifies as an adverse employment action under Title VII. *Windsor v. Rockefeller Ctr/Tishman Speyer*, No. 01 Civ. 4374, 2002 WL 1467834, at *3 (S.D.N.Y. July 8, 2002); *see also Myers v. Medco Health Solutions, Inc.*, No. 09 Civ. 9216, 2012 WL 4747173, at *13-*14 (S.D.N.Y. Oct. 4, 2012). Khan alleges that he was more qualified than the five individuals rehired for the "Secondary B-List Banquet Server" position in February or March 2013, and that his job performance had been above average. There is no avoiding the fact that the defendants "failed to rehire" Khan when, taking the allegations as true, they opted to employ five other individuals over him without a legal basis. Moreover, the defendants have persisted in their failure to rehire Khan because, years later, they have not informed him of an ultimate decision regarding his application. There seems no more material injury in the

7

employment context than the decision to not provide employment, whether the vehicle used is termination or a refusal to hire someone who, in the absence of a prohibited influence, would have been hired.

Khan has also met his initial burden with respect to causation. A plaintiff may establish a causal connection either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117 (2d Cir. 2000). Khan offers no direct evidence of retaliatory animus, and there is no need to address whether he has shown causation through temporal proximity because the pleadings contain enough circumstantial evidence to suggest a retaliatory motive.

The plaintiff alleges that Hilton declined to rehire him for the position of "Secondary B-List Banquet Server" because he filed a complaint with the EEOC on December 21, 2011. He avers, upon information and belief, that literally every individual whose employment had been terminated due to the closing of Starbucks on June 24, 2012 was subsequently rehired as a "Server" in Hilton's Banquet Department, except him. *See Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 433-434 (E.D.N.Y. 2012) ("Courts have consistently held that one way to establish a claim of retaliation is to show that the complaining employee is treated different than other employees who did not engage in a protected activity." (citing *Knight v. City of N.Y.*, 303 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2004) and *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). The employees, including Robert Arnold, Tofal Liton, Francis Butters, Jose Bermio, and Ahmed Mostaque, were rehired over Khan despite the fact that he had more relevant experience as a "Server" and his job performance while at Hilton had been exceptional.

*See Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 504 (S.D.N.Y. 2011) (holding that a plaintiff alleging race and sex discrimination had stated a claim for disparate treatment under Title VII where Complaint alleged she was passed over for employment by a candidate with less experience).

The inference that Khan was qualified for the "Server" position is bolstered by the fact that he progressed to a fourth, and perhaps final, round of interviews. *See Gaffney v. Dep't of Info. Tech. and Telecomms.*, 536 F. Supp. 2d 445, 463 (S.D.N.Y. 2008) (finding that where a manager was familiar with a candidate's "education, work experience, and technical expertise," his grant of an interview "could reasonably be read to suggest that [the applicant] possessed the basic skills and qualifications necessary for the position"). Moreover, as the plaintiff notes, a sinister inference can easily be drawn from the fact that, just hours after he expressed to Carlo that he intended to apply for one of the newly available "Server" positions, he received an email stating that his application for the job had been rejected despite the fact that he had not yet applied. Notably, none of the aforementioned individuals who were rehired had earlier complained of discrimination by the defendants. *See Conklin*, 859 F. Supp. 2d at 433-434. These circumstantial allegations, taken together, state a claim for retaliation.

## II. *NYCHRL Claims*

Both of Khan's NYCHRL retaliation[6] claims pass muster. As an initial matter, the plaintiff's theories that his application for the "Secondary B-List Banquet Server" position was

---

[6] The NYCHRL provides, in relevant part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the

9

rejected on November 2, 2011 because he had filed an EEOC charge on April 28, 2011, and that the defendants failed to rehire him when he applied for the position again in or around October 2012 due to his December 21, 2011 EEOC complaint, are properly considered given the three-year statute of limitations. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). Under this rule, because Khan filed the instant action on February 19, 2014, the window stretches back to February 19, 2011.

There is a major caveat to the defendants' citation of *Cruz v. Coach Stores, Inc.*, in which the Second Circuit stated: "Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims." 202 F.3d 560, 565 n.1 (2d Cir. 2000). Nine years later, in *Loeffler v. Staten Island Univ. Hosp.*, the Second Circuit clarified that due to the Local Civil Rights Restoration Act of 2005, "claims under the City HRL must be reviewed independently from and more liberally than their federal and state counterparts." 582 F.3d 268, 278 (2d Cir. 2009) (internal quotations omitted). Moreover, "the elements of retaliation under the NYCHRL differ ... in that the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (quotations omitted).

If, as held *supra*, Khan's claim of retaliation with respect to her December 21, 2011 EEOC charge meets the tougher Title VII standard, it necessarily withstands the scrutiny imposed by the NYCHRL. Likewise, because, as also held *supra*, the denial of a plaintiff's job application is severe enough to be an adverse employment action for Title VII purposes, Khan's

---

terms of a conciliation agreement made pursuant to section 8-115 of this chapter." N.Y.C. Admin. Code § 8-107(7) (West).

claim that he was not rehired for the "Secondary B-List Banquet Server" position because of his April 28, 2011 EEOC filing must meet the less stringent test of involving an action that would be reasonably likely to deter a person from opposing discrimination.

The defendants themselves having conceded their awareness of the April 28, 2011 filing before their alleged retaliatory actions, Soric Aff. ¶¶ 7-8, the only question left to resolve is whether the allegations in the Complaint are sufficient to show a causal connection between the filing of the April 28, 2011 EEOC charge and the denial of his original application for the "Secondary B-List Banquet Server" position on November 2, 2012, which we hold they are. Here, too, Khan offers no direct evidence of retaliatory animus, but the circumstantial evidence permits such an inference. Accepting the allegations as true, striking is the discrepancy between what Carlo told Khan after he had received a letter denying his application, which is that he had failed his interview exam by a marginal amount, and what Hilton's Manager, Dasilva, who had administered the exam, told Khan, which is that he had excelled on the exam and would advance to a second round of interviews. Khan never received information regarding the second round.

More suspicious is that the exam Hilton purported to have been completed by Khan did not reflect his handwriting, but rather appeared to have been written by the same person who graded Khan's exam. Narrowing the realm of legitimate, alternative inferences as to why he was not hired from being drawn, Khan further alleges that, at the time of his application, his job performance had been above average, and that 10 new "Secondary B-List Banquet Servers" were hired, but he was not one of them. *See Conklin*, 859 F. Supp. 2d at 433-434. Although the Complaint does not state whether the 10 individuals who were hired had not previously complained of discrimination, the allegations, especially when construed liberally as the law demands, give rise to the conclusion that the defendants conspired to reject his application, and

11

at this stage it is plausible that the reason was to retaliate for his filing of the April 28, 2011 complaint. The allegations discussed *supra* regarding the defendants' behavior arising from Khan's December 21, 2011 EEOC charge bolster the inference that the defendants were inclined to engage in such retaliatory activity.

The Court notes that Khan sues the defendants under multiple provisions of the NYCHRL. Coherently construed, the plaintiff's theories of retaliation are directed at Carlo under N.Y.C. Admin. Code §§ 8-107(7) (direct individual liability) and 8-107(6) (aider and abettor individual liability), as well as Hilton under 8-107(13) (liability for the actions of an employee or agent, such as Carlo, under 8-107(7) and 8-107(6)). The Court holds that, based on the allegations in the Complaint and for the reasons already discussed in this Opinion, each of these NYCHRL counts (of which there are four[7]) survives the defendants' Motion to Dismiss.

## CONCLUSION

For the aforementioned reasons, the defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, the Title VII retaliation claim for failure to rehire related to Khan's filing of the December 21, 2011 EEOC complaint survives. Moreover, the NYCHRL retaliation claims against Carlo for direct individual liability and aider and abettor liability, as well as against Hilton for vicarious liability, remain. All other claims are DISMISSED. The Clerk of Court is respectfully directed to terminate ECF No. 10.

**SO ORDERED.**

**Dated:**   **New York, New York**

---

[7] The Complaint erroneously pleads the two claims against Hilton under § 8-107(13) as one count (the "Fourth Cause of Action for Retaliation"), Compl. ¶¶ 63-65, for a total of only three NYCHRL counts.

February 20, 2015

_____
ANDREW L. CARTER, JR.
United States District Judge